## In Equity.

## W. F. BISBEE

*vs.*

## MT. BATTIE MANUFACTURING COMPANY.

### Knox.    Opinion October 8, 1910.

*Corporations. Liens. Dissolution. Distribution of Proceeds. Payment of Claims. Priority of Claims. Enforcement of Claims. Attachment of Real Estate. Receivers. Taxes. Revised Statutes, chapter 47, sections 80, 81; chapter 68, section 1; chapter 72, section 42; chapter 79, section 49; chapter 83, section 60; chapter 86, section 22.*

A bill in equity was filed against the Mt. Battie Manufacturing Company, a corporation, under Revised Statutes, chapter 47, sections 80 and 81, praying for a dissolution of the corporation, and the distribution of its assets. Receivers were appointed, who subsequently sold the real estate of the corporation. Prior to the filing of the bill attachments of the real estate had been made in suits by several creditors. One of these cases, that of Brown & Adams, went to judgment as of a date prior to the filing of the bill, and on the execution, issued after the filing, the real estate was sold to one of the other attaching creditors, the Camden Savings Bank. The sale was prior to the appointment of the receivers. An injunction to restrain the sale was refused by a Justice of the Court. All the other suits remained on the docket until two days after the sale, when special judgments were ordered in three of them, and executions issued. Another suit went to

judgment at the end of the term then pending. The other suits still remain on the docket. One of the suits in which special judgment was taken was that of the Camden Savings Bank. Out of the proceeds of the execution sale the officer satisfied the Brown & Adams execution, and the three executions issued on the special judgments. In a suit by the receivers against the Camden Savings Bank it was held that the sale on the Brown & Adams execution was void, the property at the time being in the custody of the law. When the receivers were appointed, the court ordered that all creditors should present their claims to the receivers before a certain date fixed, and that all claims not so presented should be forever barred. None of the claims satisfied out of the execution sale were presented to the receivers. Questions having arisen concerning the rights of the several attaching creditors, including the judgment creditors, to priority in distribution, and concerning other questions of preference or priority, it is held by the court as follows : —

1.  Valid attachments existing at the time a bill is filed for the dissolution of the corporation and the sequestration of its assets are not thereby destroyed.

2.  Distribution is to be made according to the status of the attachment liens at the time the bill was filed. From that time the liens are equitably impressed upon the property and the fund produced by its sale, and the rights of priority are not lost by mere failure to pursue useless statutory methods of enforcement. They may be waived, or be barred by the conduct of the party having the right. They do not lapse.

3.  In case of insufficiency of assets to pay all claims, distribution is to be made as of the filing of the bill. The amounts of claims, including taxable costs, are to be computed to that time, and no further.

4.  An attachment of real estate, in a suit upon an account "for balance due," without items, is invalid and creates no lien. Such an attachment is not validated by an amendment of the writ, after entry, by filing an itemized account.

5.  An attachment of real estate, in a suit upon an account annexed, with a proper itemized bill, and also upon an omnibus count, including the money counts, for a like amount, is invalid, and creates no lien, when there is no specification under the money counts, and the itemized bill attached to the first count is not referred to in the second count.

6.  While a creditor by his conduct may become in contempt of the court, and may bar himself of the right to pursue his priority in equity, the court is of opinion that under the circumstances of this case the claims of the judgment creditors should not be regarded as barred by their conduct concerning the execution sale, or the matters connected with it.

7.  The Camden Savings Bank is entitled to subrogation to the claims of Rawitzer and of Brown & Adams for priority, the same having been paid out of the proceeds of the void execution sale, in which the bank was the purchaser, as well as to priority in payment of its own claim, in its order.

8.  The court in its discretion may extend the time for proving claims, and may admit claims to proof after the time previously limited for proving claims has expired.

9.  The Camden Savings Bank cannot be allowed for attorneys' fees paid by it in the defense of the suit of the receivers against itself to recover the possession of the real estate sold to it at the void execution sale ; nor can it be reimbursed for the costs of court which it was obliged to pay on the ending of that suit; nor for sums advanced by it for the care, protection and insurance of the property while it was in its possession.

10.  In the distribution of the assets of a corporation, under a bill in equity for its dissolution and the winding up of its affairs, unpaid taxes for which there is no lien, are not entitled to preference or priority.

In equity.    On report.    Distribution according to opinion.

Bill in equity brought against the defendant corporation by its treasurer, under Revised Statutes, chapter 47, sections 80 and 81, praying for a dissolution of the corporation, and the appointment of trustees and receivers. Receivers were duly appointed and the real estate of the corporation was duly sold by them, and questions having arisen concerning the distribution of the proceeds, various creditors of the defendant corporation made application to the Supreme Judicial Court in equity to determine such questions, and by agreement the whole matter of the disposition of the money in the hands of the receivers was reported to the Law Court for determination.

See *Cobb* v. *Camden Savings Bank*, 106 Maine, 178.

The material facts are stated in the opinion.

*J. H. Montgomery*, for plaintiff.

*Joseph E. Moore, and Arthur S. Littlefield*, for receivers.

*Reuel Robinson, J. H. Montgomery, Phillip Howard, M. T. Crawford, Manson & Coolidge, and Arthur S. Littlefield*, for various claimants.

SITTING:   EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

SAVAGE, J.   This bill in equity was brought against the defendant corporation by its treasurer, under the provisions of R. S., ch. 47, sects. 80 and 81, praying for a dissolution of the corporation, and

the appointment of trustees and receivers. The date of filing does not appear. But the bill was served November 16, 1908. Receivers were appointed January 11, 1909. The real estate of the corporation has been sold by the receivers, and questions have now arisen concerning the distribution of the proceeds. The case is reported to the Law Court for the determination of the rights of the various creditors to payment.

Prior to the filing of the bill, attachments of the real estate had been made in suits by creditors in the following order; S. Rawitzer, Brown & Adams, Holyoke Warp Co., Camden Savings Bank, Frank Kenney, H. A. Metz & Co., Bacon & Co., I. L. Snow & Co., Howard Bros. Mfg. Co. and Albert Smith & Co. The Brown & Adams case went to the Law Court and was there argued. The certificate of decision was received November 28, 1908, and the case then went to judgment for the plaintiffs as of the preceding September term, as provided in R. S., ch. 79, sect. 49. Execution issued December 3, 1908. All the other suits remained on the docket until the January term, 1909, during which term, on January 6, special judgments were ordered for the plaintiffs in the suits of Rawitzer, Holyoke Warp Co. and the Camden Savings Bank, and executions issued. At the same January term the Kenney suit went to judgment for the plaintiff. All the other suits still remain on the docket.

On January 4, 1909, the real estate was sold on the Brown & Adams execution to the Camden Savings Bank, and out of the proceeds the officer satisfied that execution, and also the executions of Rawitzer, Holyoke Warp Co. and the Camden Savings Bank, issued on the special judgments referred to above. R. S., ch. 86, sect. 22. The equity in the real estate was subsequently sold, during the life of the attachment, on the execution issued on the Kenney judgment.

In *Cobb* v. *Camden Savings Bank*, 106 Maine, 178, the question of the validity of the execution sale on the Brown & Adams execution was before this court. And it was there held that the sale was invalid and that no title passed to the Camden Savings Bank, for the reason that in contemplation of law the property was in custodia legis, at least from the time of the service of the bill, under

which the receivers were appointed. This being so, the property was not subject to seizure and sale on execution afterwards, and such a sale without leave of court first obtained, was wholly void.

But the court in *Cobb* v. *Savings Bank*, also held that the rights of priority of creditors, existing at the time a bill is filed, are not destroyed by statutory proceedings for winding up a corporation and sequestrating its assets. The statutory lien by previous attachment is preserved. The enforcement of it, however, in the usual way is suspended. Lien creditors must apply to the court, which will give effect to liens which existed when the property passed into the custody of the law.

In *Cobb* v. *Savings Bank*, the court also strongly intimated that in equitable proceedings under the statute, distribution should be made according to the status of the liens at the time the bill was filed, without regard to what is done or not done afterwards. That intimation we now confirm. When the law took the property into its own possession, and prevented the lienors from pursuing statutory methods of enforcement, at least without leave of court, we think equity requires us to hold that the liens are from that time impressed upon the fund, and that rights of priority are not lost by mere inaction, by mere failure to pursue useless methods of enforcement. It is true that such lienors might at any time apply to the court to intervene. The application might be made within the statutory life of the attachment. But we do not deem that to be essential. The property is in the hands of the court for equitable distribution. And in case of insufficiency of assets to pay all claims, distribution is to be made as of the date of filing the bill. All equities existing then are protected, unless subsequently they are waived or barred. They do not lapse. If lienors make proof within such time as the court orders it is sufficient.

Under these rules it is conceded that Metz & Co., Snow & Co., Howard Bros. Mfg. Co. and Smith & Co. are entitled to priority of payment out of the fund, in the order of their respective attachments.

Before considering the disputed claims, it should be noticed that by the decree appointing the receivers it was ordered "that all creditors be and are required to present their claims against said corpora-

tion to said receivers supported by affidavit and evidence, and the first day of September, 1909, is the time limited within which all claims against said corporation shall be presented. That all claims not so presented within the time limited hereinbefore are and shall be forever barred." Of the disputed claims only those of Bacon & Co. and the Holyoke Warp Company were so presented.

It is contended by the receivers that in two of the cases where attachments were made, the attachments were invalid, and no lien or right to priority existed when the bill was filed. This contention must be sustained. The suit of Bacon & Co. was upon an account "for balance due," without items. After entry plaintiffs amended their writ by filing an itemized account. By R. S., ch. 83, sect. 60, it is provided that "No attachment of real estate on mesne process creates any lien thereon, unless the nature and amount of the plaintiff's demand is set forth in proper counts, or a specification thereof is annexed to the writ." Under this statute the attachment was clearly invalid. *Saco* v. *Hopkinton*, 29 Maine, 268. An invalid attachment cannot be made valid by an amendment of the writ. *Drew* v. *Alfred Bank*, 55 Maine, 451. This claim can be allowed only as a common claim without priority. The same is true of the claim of the Holyoke Warp Company, and for substantially the same reasons. This was a suit upon an account annexed, with a proper itemized bill. There was also an omnibus count, including the money counts, for a like amount, but with no specification. And the itemized bill attached to the first count is not referred to in the second count. In view of the statute provision above quoted, this attachment must be held invalid on the authority of *Osgood* v. *Holyoke*, 48 Maine, 410; *Hanson* v. *Dow*, 51 Maine, 165; *Drew* v. *Alfred Bank*, 55 Maine, 450; *Phillips* v. *Pearson*, 55 Maine, 570; *Shaw* v. *Nickerson*, 60 Maine, 249, and *Briggs* v. *Hodgdon*, 78 Maine, 514. This claim likewise can be allowed only as a common claim, without priority, whether it be regarded as an independent claim, or considered under the claim of the Camden Savings Bank for subrogation, which is to be noticed later.

As already stated, the Camden Savings Bank was the purchaser at the sale on the execution of Brown & Adams, and paid the purchase

price. The money received from the sale was applied by the officer in satisfaction of the Brown & Adams execution and the executions of Rawitzer, and the Holyoke Warp Company, and the bank's own execution. The sale was void. Therefore the Camden Savings Bank, now claims the right to prove its own judgment as a claim having priority by reason of its attachment existing at the time the bill was filed, and the right to be subrogated to the similar rights of Rawitzer, Brown & Adams, and the Holyoke Warp Company. Since we have found that the Holyoke Warp Company had no attachment lien, that part of the bank's claim may be disregarded in this discussion.

The claim of the Camden Savings Bank is sharply resisted. The chief objection is that these creditors,—and they may all be considered as a class together,— by their inequitable conduct while the property was in custodia legis, by seizing and selling it, and participating in the proceeds of the sale, some of them hastening to take out judgments in order that they might so participate, and by holding the receivers out of possession, have been barred in equity of their right to priority. It is contended that all these acts were done in contempt of the law and the court.

It is undoubtedly true that a creditor by his conduct may so bar himself. But we think that this principle ought not to be applied in this case. Though it has turned out that these creditors were legally in the wrong, the circumstances were not such as to show that they were not in good faith seeking to enforce what they had reason to believe were their legal rights. They were necessarily in the dark. They were also in a dilemma. If they failed to pursue their attachments, it was possible that they might lose the benefits of them. If they pursued them by sale, the sale might be held invalid. They would then have to rely upon the equitable discretion of the court. The statute on which the proceedings in equity were based had never been construed by the court. The proper interpretation of it may very fairly be said to have been uncertain and doubtful. Besides, as appears in *Cobb* v. *Savings Bank*, a Justice of the court had been applied to to enjoin the sale, and had refused to do so. It is true that every person is presumed to know the law, and to act in

the light of such a knowledge, but we hesitate to say that failure to anticipate what will be the decision of the court in construing for the first time a doubtful and untried statute shows such a degree of contempt for the law or the court as to require punishment by forfeiture. We do not say so. We think the motive is more important than the act, when the rights of others have not intervened. We think the acts of these creditors were at least excusable, under all the circumstances. We hold therefore. that these claims are not barred by the execution sale, or by the matters that were connected with it.

And it seems to us also that the Camden Savings Bank, on the principles of natural equity on which the right of subrogation is founded, is entitled to subrogation to the claims of Rawitzer and Brown & Adams for priority, as well as to the priority in payment of its own claim, after those claims are paid.

Nor does it matter now that these claims were not proved before the receivers within the time limited in the decree of the court. When that time expired, the case of *Cobb* v. *Savings Bank,* had not been decided. Their legal rights were then undetermined. If their defense was sustained, they would have no claims to prove. It is clearly within the power of a court in equity, in its discretion, to extend the time for proving claims. It may receive proofs, even after the time fixed for barring claims not proved, so long as the fund remains undisturbed and no new rights have accrued to others.

All the foregoing remarks apply to the Kenney claim. It is to be allowed as having priority in its order.

It should be said further that the amounts to be allowed on these claims are not the amounts for which judgments were taken. The estate of the corporation is to be settled as of the date of filing the bill. If there should be an insufficiency of assets to pay all claims in full, the amounts, including taxable costs, are to be computed to that time, and no further. This will work out a ratable distribution.

The Camden Savings Bank also claims to be allowed for attorneys' fees paid by it in the defense of the case of the receivers against itself to recover the possession of the real estate, and the costs of court which it was obliged to pay on the unsuccessful ending of that suit; it also claims to be reimbursed for sums advanced for the care,

protection and insurance of the property while it was in its posses-
sion. We think none of these claims can be allowed. The case of
*Cobb* v. *Savings Bank*, was an adversary proceeding. The parties
on both sides stood on their rights. The bank was in the wrong
and was defeated, and it must pay its own bills. It would be a
strange conclusion to say that the receivers must pay out of the fund
the expense of an unsuccessful attempt to prevent them from coming
into their own and having any fund.

Doubtless there may be cases where one in possession of property
without legal right, or even against legal right, may be equitably
entitled to reimbursement for expenses incurred in caring for it.
This may be true of expenses which otherwise the true owner would
have been obliged to incur. We need not decide this question. In
this case it does not appear that the insurance was for the benefit of
the estate. It must be assumed that it was for the benefit of the
bank. If so, the bank should pay for it. But as to the claim for
insurance and for care and protection as well, this is to be said.
The bank was in the wrongful possession of the property and was
wrongfully holding the receivers out. Non constat that if it had
surrendered the property to the receivers as it was its legal duty to
do, there would have been any need of insurance or care. It would
have been the duty of the receivers to sell. They were prevented
from selling by the bank. So far as the administration of the estate
is concerned, the expense was not necessary, or at least is not shown
to have been necessary. If the receivers had sold promptly after
appointment, as they might have done if not prevented, the expense
need not have been incurred. Presumably the expenses were
incurred by the bank for its own benefit. It is not entitled to reim-
bursement.

The last claim to be considered is that of the town of Camden for
unpaid taxes in the years 1905, 1906, 1907 and 1908. The report
shows that these taxes were assessed with sufficient regularity to con-
stitute a valid tax against the corporation, but not sufficient to
create any lien on the real estate. The town claims that these
taxes are a preferred claim entitled to priority in payment. We do
not think so. In the absence of any statute, taxes do not constitute

a preferred claim.   In this State by statute, R. S., ch. 68, sect. 1, in the settlement of insolvent estates of deceased persons, taxes are preferred, and so in the settlement of estates under the general insolvency statutes, now in abeyance.   R. S., ch. 72, sect. 42.   But the statute under which these proceedings are had is not an insolvent statute, although it may turn out that the corporation to be dissolved is insolvent.   It does not in terms make unpaid taxes a preferred claim.   It expressly provides for a ratable distribution.   We therefore conclude that the claim of the town of Camden for unpaid taxes is not entitled to priority.

The case will be remanded for an order of distribution.   The claims of Rawitzer, Brown & Adams, Camden Savings Bank, Kenney, Metz & Co., Snow & Co., Howard Bros. Mfg. Co., and Smith & Co., as they stood when the bill was filed, will be awarded priority of payment in the order of their respective attachments. The Camden Savings Bank will be subrogated to the rights of Rawitzer and Brown & Adams.   The claim of the Camden Savings Bank for counsel fees, for money paid for costs and for insurance and care of the property will be disallowed.   In whatever may be left after payment of these claims, all other creditors who have proved claims will share ratably.

*So ordered.*